JOURNAL ENTRY AND OPINION
This is an appeal from an order of Visiting Judge Joseph Nahra, sitting in the Juvenile Court, granting permanent custody of Tatiana Davis to the Cuyahoga County Department of Child and Family Services (CCDCFS). Appellant Victoria Davis claims there was insufficient evidence supporting permanent custody, and that the hearing procedures were defective because her child's guardian ad litem (GAL) did not submit a report until after the dispositional hearing. We do not agree and affirm.
At the time of the hearing, Ms. Davis was seventeen years old, in the permanent custody of CCDCFS, and the mother of two-year-old Tatiana.[1] Ms. Davis began her life in CCDCFS custody, was adopted at approximately age five, but her adoptive mother voluntarily gave CCDCFS permanent custody of her after she became pregnant at the age of 14. Since the baby's birth in October of 1998, she and her child had since been placed in residential group homes or foster care, either together or separately.
Ms. Davis has a history of violent behavior which has resulted in her transfer to several different placements. She and her daughter were placed at Marycrest, a group home where she received counseling and parenting classes, but she assaulted a staff member in May 1999 and was removed. Tatiana was then placed in temporary custody of CCDCFS until December 1999, when she was reunited with Ms. Davis in a foster home placement. This arrangement lasted until approximately February 2000, when she got in an argument with her foster mother, and ultimately assaulted the foster mother's then thirteen-year-old daughter by biting her in the chest. She was removed and sent to another foster home, but without the child, and was again involved in a violent altercation which resulted in the foster mother's arrest.
On March 10, 2000, CCDCFS obtained an order for emergency custody of Tatiana, and on March 13, 2000, filed a complaint alleging that she was neglected under R.C. 2151.03(A)(2), and requesting permanent custody under R.C. 2151.353(A)(4). Although the chronology is somewhat unclear, it appears that the complaint was precipitated when Ms. Davis, who was then living in a group home called Euclid House, took the child during one of her visits and disappeared for about two weeks until a babysitter informed CCDCFS of the child's location.
After the complaint was filed, Ms. Davis was placed in a group home in Columbus, Ohio, where she had continued problems and repeated incidents of leaving without permission. Although she claimed a number of these incidents were only technical violations consisting of absences for only a few minutes, she admitted to several overnight absences. Moreover, on August 1, 2000, after appearing at a scheduled pretrial proceeding in this case, she did not return to her group home, but disappeared again, until September 9, 2000, when she was stopped for questioning by police.
At a hearing on September 21, 2000, Ms. Davis admitted the allegations of an amended complaint, and Tatiana was adjudicated an abused, neglected, or dependent child. The judge immediately held a hearing on the request for permanent custody, and heard testimony from two social workers, two former foster mothers, and Ms. Davis. The evidence revealed her numerous placements throughout her teenage years, and discussed her admitted anger management problem. There was evidence that she had been diagnosed with a bipolar disorder at one point and received medication, but that treatment apparently was discontinued. Although everyone agreed that she has never exhibited anger toward her child, she admitted to engaging in heated verbal and physical altercations in Tatiana's presence, and there was evidence that she had not responded to treatment for this problem. Ms. Davis admitted she was pregnant with another child, identified the father as a sixteen-year-old, and reported she had been raped during the period between August 1, 2000, and September 9, 2000, while absent from her Columbus group home.
Tatiana's GAL questioned witnesses at the hearing and stated his recommendation orally after the lawyers made their closing arguments. He recommended that the child be committed to the permanent custody of CCDCFS, and stated his written report, not submitted prior to the hearing, would have to be revised because he wrote it while Ms. Davis was still missing, and he assumed she would not appear at the hearing. The judge ordered the GAL to submit a written report, and stated that he would take the matter under advisement pending its receipt. No one objected to the GAL's participation, to his oral recommendation, to his failure to submit a report prior to the hearing, or to the judge's order that he submit a report for consideration after the hearing.
The judge's ruling dated September 22, 2000, found Tatiana to be abused, neglected, or dependent, stated that the permanent custody issue would be taken under advisement, and ordered the GAL to submit a written report. This ruling was not journalized, however, until October 13, 2000, the same date the judge journalized an October 10, 2000 ruling that stated he was in receipt of the GAL's report, and granted permanent custody of Tatiana to CCDCFS.
The first assignment of error states:
 I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF TATIANA DAVIS TO THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES BECAUSE THE RECORD IS DEVOID OF CLEAR AND CONVINCING EVIDENCE THAT ANY OF THE CONDITIONS SET FORTH UNDER OHIO REVISED CODE SECTION 2151.414(E) EXISTED.
Before granting permanent custody of Tatiana to CCDCFS, the judge was required to find, by clear and convincing evidence, that such custody is in the child's best interest, and that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.[2] The latter determination is made by finding the existence of factors under R.C. 2151.414(E) — if the judge finds that any one of the factors is present, the statute provides that he shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.[3]
Ms. Davis claims the record is devoid of evidence supporting any of the factors under that statutory section. Although the assignment and argument are unclear, we assess this as a challenge to the sufficiency of the evidence. She has not challenged the credibility of the witnesses or the probative value of the evidence presented, but instead claims that the evidence did not reach the clear and convincing threshold necessary to support the ruling. A sufficiency challenge is a legal question we review de novo, to determine whether any reasonable factfinder could have found the applicable burden of proof satisfied on the evidence presented.[4] Under this analysis, we review the evidence in the light most favorable to the judge's decision.
Although the judge did not specify which of the sixteen factors of R.C. 2151.414(E) he found supported his decision,[5] the evidence in the record supports findings under subdivisions (1) and (4) of R.C.2151.414(E), which state as follows:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. * * * (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]
The social workers testified that Ms. Davis had been placed in several different settings, that she was given counseling for anger management and parenting classes, but had not responded and continued to have inappropriate violent incidents and disrupted her placements. Despite the fact that her child was originally taken from her because of a violent incident at Marycrest in May 1999, she had been unable to make significant progress in the ensuing sixteen months before the permanent custody hearing, and in fact had exacerbated her problems with more violent incidents. Moreover, she established a pattern of running away from her CCDCFS placements in favor of staying with friends whom she was unwilling to identify.
Although Ms. Davis contended that her two-week disappearance with her child was a misguided and desperate attempt to be with her daughter, she offered no plausible excuse for her month-long disappearance from her Columbus group home between August 1, 2000, and September 9, 2000. Finally, her second pregnancy revealed her continued inability to resolve the chaos and instability in her life, the major problem that resulted in Tatiana's removal.
These actions show Ms. Davis's inability to remedy the problems that caused Tatiana's initial removal,[6] and her unwillingness to provide an adequate permanent home for Tatiana.[7] In particular, her disappearance from her group home for over a month just before the permanent custody hearing shows irresponsibility and an unwillingness to do those things necessary to accomplish her stated goals. Although Ms. Davis points to testimony that she did not act violently toward Tatiana, and was generally able to act appropriately and care for her during the times she did so, this argument ignores the evidence showing her deficiencies in other areas, and the lack of evidence showing that she could provide appropriate care on a consistent and daily basis. The evidence was sufficient to support the judge's ruling. The first assignment of error is overruled.
The second assignment states:
 II. THE TRIAL COURT ERRED IN GRANTING THE AGENCY'S COMPLAINT FOR PERMANENT CUSTODY WHERE THE GUARDIAN AD LITEM STATED HIS VERBAL RECOMMENDATION INTO THE RECORD AFTER THE CLOSE OF THE EVIDENCE AND AFTER THE PARTIES MADE THEIR FINAL ARGUMENTS. THE TRIAL COURT FURTHER ERRED IN BASING ITS JUDGMENT FOR PERMANENT CUSTODY ON AN ALLEGED WRITTEN REPORT OF THE GUARDIAN AD LITEM THAT WAS ORDERED BY THE COURT ON SEPTEMBER 21, 2000 BUT DOES NOT APPEAR IN THE RECORD OF THIS CASE, ALL CONTRARY TO THE REQUIREMENTS SET FORTH UNDER OHIO REVISED CODE SECTION 2151.414(C).
R.C. 2151.414(C) provides that [a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing * * *. The GAL made an oral recommendation to the judge at the hearing, but stated that he would need to revise his written report and was then ordered to do so. Although Ms. Davis now assigns error to the submission and consideration of the GAL's report after the hearing, no objection was made to the failure to submit a report at the hearing, and no objection was made to the judge's express intention to receive and consider a report after the hearing, or to his order to submit a report for consideration after the hearing. The failure to object to this procedural irregularity is a waiver of error.[8]
Therefore, even though the written ruling ordering the submission of the GAL's report was not journalized until October 13, 2000, the transcript of proceedings shows the judge made an oral order and expressed his intentions at the hearing without objection. We can sustain this assignment only on a finding of plain error.[9]
We do not find any manifest injustice warranting a plain error finding here, and we cannot say that the judge's ruling would have been different had he insisted on the timely submission of the GAL's report. To the contrary, there was ample evidence to support the ruling without the GAL's recommendation. The second assignment of error is overruled.
Judgment affirmed.
It is ordered that the appellee recover from appellant costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Court Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
_______________________ ANNE L. KILBANE, JUDGE:
DIANE KARPINSKI, ADM. J., and TERRENCE O'DONNELL, J., CONCUR.
[1] The alleged father has been identified and was served in this action, but has not challenged CCDCFS's permanent custody of Tatiana.
[2] R.C. 2151.353(A)(4), 2151.414(B)(1).
[3] R.C. 2151.414(E).
[4] State v. Stallings (2000), 89 Ohio St.3d 280, 289, 731 N.E.2d 159,171.
[5] No one requested findings of fact and conclusions of law under R.C. 2151.353(A)(4).
[6] R.C. 2151.414(E)(1).
[7] R.C. 2151.414(E)(4).
[8] In re Hauserman (Feb. 3, 2000), Cuyahoga App. No. 75831, unreported.
[9] State v. Long (1978), 53 Ohio St.2d 91, 95-96, 7 O.O.3d 178,372 N.E.2d 804, 807.